UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

PAULA GROOVER,

 Plaintiff,

v.              ACTION NO. 2:09cv507

MICHAEL J. ASTRUE,
Commissioner of Social Security,

 Defendant.

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff brought this action under 42 U.S.C. § 405(g) and 42 U.S.C. §1383(c)(3) seeking judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for a period of disability and disability insurance benefits under Title II of the Social Security Act. This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. This Court recommends that the decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL BACKGROUND

On January 24, 2006, Plaintiff Paula Groover ("Plaintiff" or "Ms. Groover") filed an application for a period of disability and Disability Insurance Benefits ("DIB") (R. 85-87),[1] alleging that she had been disabled since April 15, 2004 due to migraine headaches, stomach problems,

---

[1] Page citations are to the administrative record previously filed by the Commissioner.

osteoporosis and hearing loss. (R. 89). The Commissioner denied Ms. Groover's application initially, and upon reconsideration. (R. 26, 33). Ms. Groover filed a Request for Hearing on September 11, 2006 and a hearing was held in Norfolk on January 10, 2007 before Administrative Law Judge (ALJ) Harry H. Barr. (R. 262–76). Independent vocational expert Robert D. Edwards testified. (R. 42, 44 ). On February 20, 2007, ALJ Barr issued a decision denying Ms. Groover's claim. (R. 12-21). Ms. Groover filed a Request for Review to the Appeals Council on February 28, 2007, which was later denied on September 3, 2009. (R. 7–11). The Commissioner adopted ALJ Barr's decision as his own.

After exhausting administrative remedies, Ms. Groover filed a Complaint to this Court on October 13, 2009, in accordance with 42 U.S.C. § 405(g). On January 4, 2010, an Order was entered directing parties to file motions for Summary Judgment. (Order, ECF No. 8).

Ms. Groover's Motion for Summary Judgment was submitted on February 3, 2010 (ECF No. 9), and Defendant's Cross Motion for Summary Judgment was submitted on March 3, 2010 (ECF No. 11).

## II. FACTUAL BACKGROUND

Plaintiff Paula J. Groover is approximately sixty years of age. She has a high school diploma and three years of college credits. (R. 265). Although Ms. Groover has been treated for various ailments throughout her adult life, her primary complaints, which form the basis of this claim, arose on or about April 15, 2004. Ms. Groover's application for disability and Disability Insurance Benefits states that she suffered from migraine headaches, chronic stomach problems, hearing loss and hip pain. (R. 60). Ms. Groover discontinued work as a medical assistant in an office setting on April 15, 2004, the alleged date of the onset of her disability. (R. 266). Ms. Groover's insured status expired on June 30, 2005. (R. 17).

Prior to her date last insured, medical treatment is documented for Ms. Groover's stomach pain. On October 18, 2004, Plaintiff underwent an upper endoscopy. (R. 244). Jeff R. Willis, M.D., reported that the results suggested delayed gastric emptying or gastroparesis. (Id.). Dr. Willis did not see any evidence of obstruction, but stated the exam was limited. (Id.). He recommended that Ms. Groover follow a gastroparesis diet. (Id.). On October 22, 2004, Plaintiff underwent an upper gastrointestinal and small bowel study. (R. 258). Plaintiff's stomach emptied readily, and her small bowel transit was quick. (Id.). On November 16, 2004, Ms. Groover underwent a laparoscopy with bilateral salpingo-oophorectomy and ablation of peritoneal endometriosis. (R.149). One year later, on November 18, 2005, x-rays of Ms. Groover's abdomen were normal. (R. 158).

After the date last insured, Ms. Groover continued to seek treatment for stomach pain. On December 1, 2005, Dr. Willis reported that Plaintiff's recent colonoscopy, on November 11, 2005, showed diverticular disease but was otherwise normal. (R. 163). Dr. Willis suspected that Plaintiff's complaints of abdominal pain were related to gas or to her use of Ibuprofen. (Id.). Dr. Willis gave Plaintiff recommendations for her diet and advised her to limit her use of nonsteroidal anti-inflammatory drugs (NSAIDS) and aspirin. (R. 163-64). He started her on a trial of Prevacid. (R. 164).

On October 24, 2006, Ms. Groover underwent an esophagogastroduodenoscopy with biopsy and photography. (R. 255). This study showed the presence of retained food. (R. 256). A gastric emptying solid study on December 26, 2006 showed no emptying from the stomach for up to 90 minutes. (R. 254). On January 2, 2007, Dr. Willis prescribed a trial of Zelnorm to treat Plaintiff's gastroparesis. (R. 259). He also recommended that she undergo a trial of the

3

medication Reglan. (R. 259).

The record shows evidence of Ms. Groover's migraine headaches only after June 30, 2005, the date last insured. On August 16, 2005, Laurie A. Goldsticker, M.D. reported that a physical examination of Ms. Groover was normal. (R.160). Ms. Groover reported some improvement in her migraine frequency after using Topamax. (Id.). Dr. Goldsticker referred Ms. Groover to Dr. Pellegrino, a neurologist, for continued onsets of migraines. On January 3, 2006, Dr. Pellegrino reported that physical and neurologic examinations were completely normal. (R. 208). Dr. Pellegrino suggested increasing Plaintiff's dosage of Topiramate (Topamax). (Id.). He also explained the need for Plaintiff to engage in a regular exercise and physical fitness program. (R. 209). Ms. Groover told Dr. Pellegrino that she and her husband would be leaving for a cruise in two weeks. (R. 208). Following the cruise, Ms. Groover reported on February 6, 2006 that she had virtually complete relief of her headaches during her cruise and she continued to feel well since her return. (R. 206). At Ms. Groover's hearing before ALJ Barr, she reported increased migraine frequency since she ceased work, throughout the last year. (R. 271).

Plaintiff also complains of back pain and hearing loss. On November 18, 2005, a KUB film documented that Ms. Groover was s/p spinal fusion in the lumbar region and was without complications. (R. 158, 17A). The fusion occurred prior to the date last insured, but since surgery, Ms. Groover has not sought treatment and has not reported any trouble with her lumbar region that is evident on the record.

Finally, Plaintiff suffers from hearing loss that was present prior to her date last insured, but not diagnosed until after the date last insured. The first evidence of such hearing loss on the record appears when Dr. Goldsticker referred Plaintiff to Richard J. Hood, M.D., for an evaluation of her

hearing on April 6, 2006. (R. 174). Ms. Groover reported that she did not wear hearing aids because she felt that they did not help with her hearing. (Id.). An audiogram showed bilateral symmetric moderate hearing loss, but excellent speech discrimination. (R. 176, 178). The audiologist noted that Ms. Groover's communication ability and voice quality were normal. (R. 176).

At Ms. Groover's administrative hearing, she testified that she shared housework with her husband, read, attended church and visited with family. (R. 267). With the use of her hearing aids, Ms. Groover was able to clearly communicate with the ALJ and indicated that she could hear the proceedings well. She testified that her stomach pain and headaches improved during her cruise the previous year, but that she has since felt severe stomach pain consistently and has to lay down most of the time. (R. 270). Ms. Groover stated that due to her lumbar fusion and hip pain she had to constantly switch positions and could not walk far without stopping to rest. (R. 272–73).

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record, and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C.A. § 405(g) (2010); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Substantial evidence is "such relevant evidence as 'a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N. Y. v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the Court does not undertake

to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig, 76 F.3d at 589; Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed, unless the decision was reached by means of an improper standard or misapplication of the law. Perales, 402 U.S. at 390; Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) (citing Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980)).

Thus, reversing the denial of benefits is appropriate only if either (A) the ALJ's determination is not supported by substantial evidence on the record, or (B) the ALJ made an error of law. Coffman, 829 F.2d at 517.

## IV. ANALYSIS

To qualify for a period of disability and disability insurance benefits under sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, and be under a "disability" as defined in the Act. The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the:

> inability to do any substantial gainful activity[2] by reason of any

---

[2] "Substantial gainful activity" is work that (1) involves doing significant and productive physical or mental duties; and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510; § 416.910 (2008). Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not

6

medically determinable physical or mental impairment[3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a) (2008); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A) (2008). To meet this definition, the claimant must have a "severe impairment"[4] which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy.[5] 20 C.F.R. § 404.1505(a) (2008); see also 42 U.S.C. § 423(d)(2)(A) (2008).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered to determine whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The ALJ must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments, (4) has an impairment which prevents past relevant

---

generally considered substantial gainful activities. 20 C.F.R. § 404.1572 (2008).

[3] "Physical or mental impairment" is defined in section 223(d)(3) of the Social Security Act, Title 42 U.S.C. § 423(d)(3), as an impairment that results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

[4] The regulations define a severe impairment as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(c), 416.920(c) (2008).

[5] The Administration may satisfy its burden by showing that considering the claimant's residual functional capacity, age, education and work experience, the claimant is either disabled or not disabled based on medical-vocational guidelines, or "grids," published at 20 C.F.R., Pt. 404, Subpt. P, App. 2 (2004). However, technical application of the grids is not always appropriate, and thus the Commissioner must rely on the testimony of a vocational expert to determine whether an individual claimant is in fact capable of performing substantial gainful activity available in significant numbers in the economy. 20 C.F.R. § 416.920(f) (2008); § 404.1520(f) (2008); Heckler v. Campbell, 461 U.S. 458, 466 (1983); SSR 83-10.

work, and (5) has an impairment that prevents him from any substantial gainful employment. An affirmative answer to question one or a negative answer to question two or four results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920 (2008).

A. **The ALJ's Decision**

In a decision dated February 20, 2007, Administrative Law Judge Barr concluded that Ms. Groover was not under a disability as defined in the Social Security Act between the date of alleged onset through the date last insured. (R. 21). After outlining the applicable law, the ALJ proceeded through the first two steps in the evaluation process. ALJ Barr found that Ms. Groover met the insured status requirements on June 30, 2005 and did not engage in substantial gainful activity during the period from April 15, 2004, the alleged onset date, through June 30, 2005. (R. 17). ALJ Barr did find that during the relevant period Ms. Groover had impairments, but they did not amount to a severity level necessary to equal a condition that would result in a determination of a disability under the Social Security Guidelines, 20 C.F.R. 404.1521. (R. 17A). The ALJ's decision outlined the "medically determinable impairments" as moderate hearing loss, headaches, gastroparesis, left hip degenerative joint disease, and status-post lumbar fusion. (R. 17). He determined through summarization of medical records and testimony that Ms. Groover's aliments had been treated and responded well to treatment. (R. 17A–21).

The ALJ specifically noted Ms. Groover's headaches, although chronic, had responded well to medication and she had reported improvement during the relevant period. (R. 17–17A). Plaintiff's hearing loss was aided through hearing aids and she was able to converse at a normal tone (R. 17A). The ALJ also found Plaintiff had no complications or calcifications as a result of her lumbar fusion

(Id.), and her hip pain had been treated and showed no worsening during the relevant time between onset and date last insured. (R. 17A–18). Ms. Groover's gastroparesis was alleged to have presented as early as October 18, 2004, but several tests were performed and this diagnosis was not confirmed prior to June 30, 2005. Ms. Groover was treated through a abdominal laparoscopy and improved following the procedure. The confirmed diagnosis of gastroparesis was not documented until 2007, more than a year following her date last insured. (R. 18). After considering the medical evidence contained in the record, as well as the testimony given by Ms. Groover at the administrative hearing, the ALJ found Ms. Groover was not disabled under the statutory guidelines discussed above.

Plaintiff argues that the Commissioner's decision cannot be supported by substantial evidence under Step Two of the sequential analysis given the severity of her disabilities. (Pl.'s Mem. in Support of Mot. for Summ. J. at 7, ECF No. 10). Additionally, she argues that substantial evidence does not support the ALJ's finding that Dr. Willis's medical opinion be given no weight. (Id. at 9). Finally, Plaintiff asserts that ALJ Barr's finding that Plaintiff lacks credibility is improper and is not supported by substantial evidence. (Id.). This Court considered each argument, and recommends that the Commissioner's decision is supported by substantial evidence and, therefore should be affirmed.

## B. Substantial Medical Evidence and The Impact of Date Last Insured

Plaintiff argues that the Commissioner's decision that she did not have a disability prior to June 30, 2005 is not supported by substantial evidence. Ms. Groover further argues the ALJ should have applied a *de minimis* standard to determine the severity of her conditions. (Pl's Mem. p. 7–8). Taken together, her surgeries and medications "in and around the time of her date last insured" clearly meet the *de minimis* test and the ALJ should have proceeded to the determination of whether

Ms. Groover is prevented from engaging in a gainful activity. (Id. at 8). After reviewing the record, this Court finds the Commissioner's decision is supported by substantial evidence.

The ALJ's decision must emphasize evidence of a disability that is established before the date last insured. See Johnson, 434 F.3d at 655-56 (stating that a claimant must prove disability prior to his or her date last insured). Ms. Groover acquired sufficient quarters of coverage to be insured through June 30, 2005; defining April 15, 2004 through June 30, 2005 as the relevant time period for consideration. (R. 66). Further, in reviewing the evidence, the ALJ is also entitled to discount ailments that have been addressed successfully through medication or other treatments. Gross, 785 F.2d at 1166 ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). ALJ Barr properly applied these two principles.

### 1. Evidence After the Date Last Insured

Because a disability must be present prior to the claimant's date last insured, the ALJ is limited to consideration of relevant medical evidence with demonstrated evidence of a disability prior to Plaintiff's date last insured. See 42 U.S. C. § 423 (a)(1)(A); see also Johnson, 434 F.3d at 656 (collecting cases upholding the denial of DIB where claimants failed to demonstrate the presence of a disability prior to the date last insured). There is no medical evidence during the relevant period to support Ms. Groover's claim of disability based on chronic headaches. Ms. Groover visited physicians Dr. Hogan and Dr. Pellegrino, neurologists, to receive treatment for her chronic headaches in August 2006, more than one year after her date last insured. Because the evidence is outside the scope of Ms. Groover's date last insured, the ALJ was entitled to disregard this evidence when making his decision.

Further, although the ALJ resolved the issue in favor of the Plaintiff, stating that gastroparesis

10

could have afflicted the Plaintiff prior to date last insured, he need not have given significant weight to Dr. Willis's opinions. (R. 18). Many of the submitted medical reports from Dr. Willis are dated well after Plaintiff's date last insured, and most indicate that Ms. Groover's stomach pain was treatable. The bulk of the evidence indicating that Plaintiff was limited by gastroparesis comes from only one source, Dr. Willis, and much of this evidence is dated after the Plaintiff's date last insured. The ALJ properly rested his decision on the evidence adduced which addressed Ms. Groover's condition as it was prior to the date last insured.

### 2. Plaintiff's Treatable Conditions

The record indicates that Ms. Groover's stomach ailments were explored in 2004 and abdominal adhesions were removed. (R. 149). Follow-up appointments revealed normal findings. (R. 158, 166). Additionally, Ms. Groover's decreased usage of NSAIDS resulted in reports that she was improved. (R. 162). Dr. Willis's 2007 report that Plaintiff is afflicted with gastroparesis was discounted by the ALJ because tests revealed no medical evidence was available prior to June 30, 2005 which would demonstrate the presence of severe gastroparesis. Plaintiff had under gone an upper GI series in 2004 prior to the removal of abdominal adhesions, but the results indicated no delay in emptying. (R. 244, 258). After the surgery, Ms. Groover reported no complications, indicating her stomach pain was treatable and her pain was attributable to the adhesions.

Similarly, Plaintiff's hip bursitis and lumbar fusion responded to treatment and, thus the ALJ did not err in discounting these ailments during his consideration of the record. Dr. Gupta submitted a report that concluded that Ms. Groover's s/p spinal fusion would not cause significant work limitations. (R. 213). Additionally, Ms. Groover complained of pain in her hip during the relevant period, but she did not seek treatment prior to her date last insured. The ALJ resolved the issue in

her favor, however, giving her the benefit of the doubt that the pain surfaced before her date last insured. Records support the ALJ's finding that, even if Ms. Groover's bursitis was present prior to June 30, 2005, it did not amount to a disability. Ms. Groover was seen only three times by Dr. Louis Jordan[6] for hip pain and received injections which appeared to treat the condition. Dr. Jordan reported that her hip was non-tender with range of motion. (R. 227–29). There is no other evidence in the medical records related to Ms. Groover's hip pain.

Plaintiff's stomach pain, hip pain and lumbar fusion all showed responsiveness to treatments, and thus were given less weight in considering whether they amounted to a disability either individually or collectively. Further, evidence of ailments present prior to June 30, 2005 correctly formed the basis of the ALJ's decision that Plaintiff did not suffer a disability, as is proper under the Social Security Act. Therefore, the Commissioner's denial of disability status is supported by substantial medical evidence.

## C. Dr. Willis's Medical Opinion

Plaintiff next argues that the ALJ's failure to give considerable weight to Dr. Willis's opinion was in error and not supported by substantial evidence. (Pl.'s Mem. at 9, ECF No.10). She states that Dr. Willis should have been given controlling weight because he was a long-term treating gastroenterologist. (Id.). The "treating physician rule," as defined by regulation and applied in this judicial circuit, provides that a treating source's opinion on issues regarding the nature and severity of impairment is to be given controlling weight if it is well supported by medically- accepted clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the

---

[6]"Dr. Louis Jones" is named in the ALJ's decision as Ms. Groover's treating physician for her hip pain. Upon review of the record, however, Ms. Groover's treating physician for her hip pain is a "Dr. Louis Jordan." (R. 227–29).

record. 20 C.F.R. §§ 404.1526(b); 404.1527(d)(2); 416.927(d)(2). Conversely, however, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590.

The ALJ found "the evidence does not support Dr. Willis's opinion," and details discrepancies between Dr. Willis's November 7, 2006 opinion and earlier records of his visits with Ms. Groover. (R. 20–21). Additionally, he found that "[t]he record establishes that the claimant is much more active than alleged." (R. 20). In 2006, Dr. Willis indicated that Ms. Groover is limited to sedentary work. (R. 232). However, the earlier medical records indicate instances of Ms. Groover improving with medication and decreased use of NSAIDS. (R. 162, 163). The ALJ's findings indicate that he considered all the relevant evidence, but found that Dr. Willis's opinion was not supported by the balance of the record. (R. 21). Other reviewing physicians are cited by the ALJ, and their reports contained within the administrative record, which indicate that Plaintiff was not limited as she claimed. (R. 20 (specifically naming four physicians who found that Ms. Groover suffered from nonsevere impairments)). Additionally, Ms. Groover testified as to her activities, including travel, which weigh against Dr. Willis's finding that Ms. Groover is limited to sedentary work. (R. 267–68). A review of the medical evidence leads this Court to the conclusion that the ALJ's decision not afford Dr. Willis's opinion controlling weight, and his subsequent ruling that Ms. Groover is not disabled under the Social Security Act is supported by substantial evidence.

### D. The ALJ's Credibility Assessment

Finally, Plaintiff asserts her complaints of severe pain are substantiated by Dr. Willis's objective medical opinion, and therefore the ALJ's finding that her allegations of pain are non-credible cannot be supported by substantial evidence. (Pl's Mem. at 11, ECF No. 10). Although

13

credibility assessments are improper at this stage of the proceeding, this Court is empowered to review the Commissioner's decision for support by substantial evidence, and find that substantial evidence supports the ALJ's finding as to Ms. Groover's credibility. Johnson, 434 F.3d at 658–59 (citing Craig, 76 F.3d at 589). Additionally, "[s]ubjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591. The ALJ specifically stated that "[a]fter considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could have been reasonably expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 19). The ALJ found that, although some of the objective medical conditions could produce pain, Plaintiff's activity was more varied than alleged, and was inconsistent with documented evidence. (R. 19). Plaintiff's statement that she was "chained to the house" due to her pain is not consistent with reported improvement while on medication, and her other activities such as housework, visiting with relatives, attending church, and leaving for a two week cruise, during which she stated she did not have any significant pain. (R. 19). Plaintiff's subjective claims of pain "cannot take precedence of objective medical evidence or lack thereof," and when taken as a whole, the Commissioner's decision is supported by substantial evidence. Gross, 785 F.2d at 1166 (citing Parris, 733 F.2d at 327).

## IV. RECOMMENDATION

For the foregoing reasons, the Court recommends that the final decision of the Commissioner be AFFIRMED.

14

## V. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Tommy E. Miller
United States Magistrate Judge

Norfolk, Virginia
October 19, 2009

15