

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

PAULA GROOVER
    Plaintiff,

v.                                            Civil No. 2:09cv507

MICHAEL J. ASTRUE
Commissioner of Social Security,
    Defendant.

## ORDER

Plaintiff Paula Groover ("Plaintiff") brought this action under Title 42, United States Code, Section 405(g) seeking judicial review of the Commissioner of Social Security's Decision to deny her claim for a period of disability and Disability Insurance Benefits under Title II of the Social Security Act.

By Order dated December 21, 2009, this matter was referred to a United States Magistrate Judge, pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), for a Report and Recommendation ("Report"). By Report filed October 19, 2010, the Magistrate Judge recommended that the final decision of the Commissioner be affirmed. This Court received Plaintiff's Objections to the Magistrate's Report on November 3, 2010. Specifically, Plaintiff argues (1) that the Commissioner's determination that Plaintiff's impairments are non-severe is contrary to law, and (2) that the Commissioner failed to consider the effect of Plaintiff's impairments in the aggregate rather than as individual limitations. For the reasons explained below, the Court hereby

**ADOPTS** the findings in the Magistrate Judge's Report and **AFFIRMS** the final decision of the Commissioner.

## I.  PROCEDURAL HISTORY

In February 2006, Plaintiff filed an application for a period of disability and Disability Insurance Benefits alleging that migraine headaches, chronic stomach pain, osteoporosis of the hips and back, and hearing loss due to trauma had rendered her disabled since April 15, 2004. (R. 57–61). Based on the administrative record summarized below, the Commissioner denied Plaintiff's application both initially and on reconsideration. (R. 26, 33). Administrative Law Judge Harry H. Barr held a hearing in the matter on January 10, 2007, at which independent vocational expert Robert D. Edwards testified. By decision dated February 20, 2007, ALJ Barr determined that Plaintiff was not under a disability as defined in the Social Security Act. A Request for Review to the Appeals Council was denied, and the Commissioner of Social Security adopted ALJ Barr's Decision on September 3, 2009.

Administrative remedies exhausted, Plaintiff sought review of the Commissioner's decision in this Court. The matter was referred to United States Magistrate Judge Tommy Miller for the Report and Recommendation to which Plaintiff now objects.

## II.  ADMINISTRATIVE RECORD

Plaintiff, a sixty year old female, alleges that migraine headaches, chronic stomach pain, osteoporosis of the hips and back, and hearing loss due to trauma have rendered her disabled since April 15, 2004, the date on which she ceased working as a

medical assistant. (R. 57–61).[1] Plaintiff's insured status expired on June 30, 2005. (R. 66).

(1) <u>MIGRAINE HEADACHES</u>: The administrative record establishes that Plaintiff has been treated for migraine headaches by Dr. Laurie Goldsticker, a primary care physician, and Drs. Thomas Pellegrino and Joseph Hogan, both neurologists. (R. 92). Plaintiff first sought treatment for migraines from Dr. Goldsticker on August 16, 2005, (id.), and was later referred to Dr. Pellegrino. A "New Patient Evaluation" dated January 3, 2006, submitted by Dr. Pellegrino notes that Plaintiff's history of headaches spans 15 to 20 years. (R. 207). The report further states "[t]wo years ago, she was started on topiramate, which she feels this was really substantially helpful with a dramatic decrease in the frequency and intensity of her headaches." (Id.). Dr. Pellegrino increased Plaintiff's daily dosage of topiramate "since she did seem to have a good response to this." (R. 208). According to the evaluation, Plaintiff agreed to contact Dr. Pellegrino following a cruise she was taking with her husband in January 2006. (Id.). A "Neurology Progress Note" dated February 7, 2006, indicates that Plaintiff appeared for a follow-up appointment on February 6, 2006, at which time Dr. Pellegrino recommended no increase in medication, instead suggesting a physical therapy and exercise program (R. 206). Dr. Pellegrino's Note reports "[s]he recently returned from a cruise with her husband; she had virtually complete relief of her headaches during the cruise and she has continued to feel well since she returned. She thinks the increase in her topiramate has been very helpful. She actually (sic) quite pleased with her progress at this point . . . ." (Id.); <u>see also</u> (R. 162) (noting Plaintiff's positive response to increased dosage of Topamax).

---

[1] Page citations are to the administrative record previously filed by the Commissioner.

A second Neurology Progress Note dated May 12, 2006, following a second follow-up appointment states that Plaintiff "has done fairly well on [topiramate] and has noted a significant reduction in the frequency and intensity of her headaches." (R. 205). In August 2006, however, Plaintiff reported experiencing six to fifteen migraines per month to Dr. Joseph Hogan. (R. 204). Dr. Hogan increased Plaintiff's topiramate dosage to 200 milligrams twice daily, which Dr. Hogan's report indicates is full-dose Topamax. (R. 204). The administrative record contains no additional information regarding Plaintiff's treatment for migraine headaches since August of 2006.

(2) CHRONIC STOMACH PAIN: According to the administrative record, Plaintiff was evaluated for abdominal pain in 1998 by Dr. Sumner Bell, who concluded that Plaintiff suffered from chronic pain syndrome. (R. 247). On October 18, 2004, Plaintiff underwent an upper endoscopy at the recommendation of Dr. Jeff R. Willis, the results of which suggested delayed gastric emptying or gastroparesis. (R. 244). Dr. Willis recommended that Plaintiff adhere to a gastropareis diet and submit to an upper gastrointestinal and small bowel study. (Id.). The results of the upper gastrointestinal and small bowel study, conducted on October 22, 2004, indicated that Plaintiff's stomach emptied readily, and her small bowel transit was quick. (R. 258).

On November 16, 2004, Plaintiff underwent a laparoscopy with bilateral salpingo-oophorectomy and ablation of peritoneal endometriosis. (R. 149). Abdominal adhesions were removed from Plaintiff's abdomen without complication. (R. 149–54). A subsequent colonoscopy on November 11, 2005, and exam conducted on November 18, 2005, indicated diverticular disease but no additional abnormality. (R. 158, 163, 168). The November 18 follow-up exam indicated Plaintiff's "bowel gas pattern is normal."

(R. 158). By letter dated December 1, 2005, Dr. Willis speculated that Plaintiff's abdominal pain was caused by gas and Plaintiff's use of Ibuprofen and BC powders. (R. 163). Dr. Willis recommended a standard post gastroectomy diet, reduced use of nonsteroidal anti-inflammatory drugs (NSAIDS)[2], and a trial of Prevacid. (R. 163–64). Plaintiff's reduced use of NSAID pain relievers reportedly "much improved" Plaintiff's stomach pain. (R. 162).

On October 24, 2006, Plaintiff underwent an esophagogastroduodenoscopy with biopsy and photography which revealed a "moderate amount of retained food." (R. 255). A subsequent gastric emptying solid study on December 26, 2006, verified the presence of retained food, and in fact showed no emptying from the stomach for up to 90 minutes. As a result of these findings, Dr. Willis advised Plaintiff to continue taking Prevacid and further recommended Zelnorm or Reglan to treat Plaintiff's gastroperesis.

(3) <u>OSTEOPOROSIS</u>: Plaintiff complains of back and hip pain attributable to osteoporosis. Plaintiff's disability report indicates Dr. Laurie Goldsticker, a primary care physician, as her osteoporosis treating physician. (R. 92). A "New Patient Evaluation" completed by Dr. Goldsticker on August 16, 2005, notes that as of that date, Plaintiff had received a "clean bill of health" following a "very thorough evaluation" by a cardiologist, a rheumatologist, and an endocrinologist. (R. 160).

On September 30, 2005, Plaintiff sought treatment for right hip pain from Dr. Louis C. Jordan. Dr. Jordan's notes following evaluation indicate that Plaintiff had previously complained of hip pain and that on at least two prior occasions hip injections "had worked pretty well for her." (R. 229) As on the occasions prior, Dr. Jordan injected

---

[2] Dr. Pellegrino also speculated that Plaintiff's abdominal pain was attributable, at least in part, to her taking "large amounts of aspirin." (R. 209).

Plaintiff with Kenalog and Marcaine, and instructed her to return as needed. (Id.). The administrative record indicates that Plaintiff returned to Dr. Jordan twice after this first visit, once on May 10, 2006, and again on July 19, 2006. (R. 228).

An abdomen/ KUB X-ray administered on November 18, 2005, revealed spinal fusion plates in the lumbar region, but suggested "no abnormal calcifications." (R. 157). Futher, the X-ray did not suggest signs of osteoporosis. (R. 163) (noting that both an X-ray and CT scan of Plaintiff's abdomen and pelvis indicated no significant abnormality).

(4) HEARING LOSS: Plaintiff states that she suffers from hearing loss related to ear trauma. The first record of Plaintiff's treatment for hearing loss in the administrative record is an April 6, 2006, "History and Physical" evaluation prepared by Dr. Richard J. Hood. (R. 174). Dr. Hood's report confirms bilateral symmetric moderate SN hearing loss, but also notes Plaintiff's normal communication ability and "excellent speech discrimination." (R. 174–78). In addition, though Dr. Hood reports that Plaintiff reported little benefit from wearing her five-year-old hearing aids, Dr. Hood discussed hearing aid options as potential prophylactics. (Id.).

On January 10, 2007, Plaintiff testified at a hearing before ALJ Barr that she shared household chores with her husband and that her reported symptoms did not prevent her from performing any household tasks. (R. 267) ("Q: Is there any of the housework you can't do? A: There's not very much to be done but, no, there's not."). Plaintiff also testified that her medical problems did not prevent her from going to church on Sundays or visiting relatives. (Id.). At the hearing, Plaintiff reportedly wore her hearing aids, and her testimony reflects that she had no difficulty hearing ALJ Barr or understanding his questioning. (R. 168).

## III. LEGAL STANDARD

On appeal of the final decision of the Commissioner, the Court must uphold the Commissioner's decision if, based upon the entire administrative record, the decision is supported by substantial evidence. 42 U.S.C. § 405(g); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir 2005); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson, 434 F.3d at 653 (quoting Craig, 76 F.3d at 589). Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig, 76 F.3d at 589; Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Where conflicting evidence allows reasonable minds to differ as to whether the claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or on the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589 (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). Only if no reasonable mind could accept the record as adequate to support the determination will the denial of benefits be reversed. Richardson v. Perales, 402 U.S. 389, 401 (1971).

While a magistrate judge may make a recommendation to the Court; "this recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court." Owens ex rel. Metcalf v. Barnhart, 444

F. Supp. 2d 485, 488 (D.S.C. 2006) (citing Matthews v. Weber, 423 U.S. 261, 269 (1976)). Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), a party objecting to a magistrate's report and recommendation may serve and file specific written objections to the proposed findings and recommendations. Upon the filing of specific written objections to a Magistrate Judge's Report and Recommendation, the Court is required to review *de novo* those portions of the report to which objections are made. 28 U.S.C. § 636(b)(1) (stating that "a judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made"); see also Winford, 917 F. Supp. at 399–400 (noting that if a party files written objections to a magistrate judge's report and recommendation, the district court is required to make *de novo* determinations of the report to which the objection is made).

IV. ANALYSIS

(a) Commissioner's Determination that Plaintiff Was Not Disabled Under the Social Security Act

In determining whether an applicant is entitled to a period of disability and disability insurance benefits under Title II of the Social Security Act, the Commissioner engages in a five-step sequential evaluation process to determine whether such applicant is "disabled" as the term is defined under the Act.[3] 20 C.F.R. § 404.1520(a); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Step two of the sequential process inquires as to whether the applicant suffers from a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii) ("If you do not have a severe medically

---

[3] Title II of the Social Security Act, 49 Stat. 620, as amended, defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(1).

determinable physical or mental impairment . . . we will find that you are not disabled."); see also 20 C.F.R. § 404.1520(c) ("You must have a severe impairment. If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience."). "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R § 404.1521(a); see also 20 C.F.R. § 1521(b) (defining "basic work activities" as "the abilities and aptitudes necessary to do most jobs") The Commissioner's analysis does not proceed to step three unless the applicant is found to have a severe impairment or combination of impairments. Yuckert, 482 U.S. at 141.

As an additional note, symptoms that can be "reasonably controlled by medication or treatment [are] not disabling." Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986).

Plaintiff objects to ALJ Barr's determination that she was not suffering from a medically severe impairment or combination of impairments through her date of last insured, June 30, 2005. Plaintiff argues that the ALJ should have applied a *de minimis* standard to determine the severity of her conditions.

Specifically, ALJ Barr concluded Plaintiff

> was not as limited as alleged. She certainly has experienced some discomfort and other unpleasant but transient symptoms and sought treatment when needed. However, this was not on a consistent basis. . . . [C]laimant sought out her treating sources infrequently and not only failed to describe the symptoms and limitations she described in her function report but actually reported improvement and good response to medications.

(R. 19). Plaintiff's Objection carefully lists her various impairments and medications.[4] Yet, Plaintiff's Objection does not dispute that certain of Plaintiff's listed maladies are reasonably controlled by medication. Plaintiff reported significant relief from both her migraines and abdominal pain in February 2006, (R. 206, 162), well after her last date insured. In fact, Plaintiff's positive response to Topamax to treat her migraines reduced her reliance on NSAID pain relievers, thereby contributing to her reportedly "much improved" stomach pain. (R. 162) ("[H]er pain seems to have improved as she has been avoiding the excessive use of nonsteroidal anti-inflammatory drugs."). Limiting stress levels and adhering to a standard post gastrectomy diet, as Plaintiff has been advised to do on several occasions, seemingly offer Plaintiff further relief from these symptoms. (R. 269) (reporting Plaintiff's testimony before ALJ Barr that she did not experience migraines or stomach problems while on her cruise because she was well-rested and ate small portioned meals); see also (R. 244, 246, 249) (documenting Dr. Willis' repeated recommendations in 2004 that Plaintiff adhere to a post gastrectomy diet); (R. 259) (documenting Dr. Willis' 2007 reminder to Plaintiff of the importance of following a low fat, low residue diet). Plaintiff's Function Report indicates that she is able to manage her stress levels. (R. 112 ("Stress is not a problem.")). Given Plaintiff's reported significant improvement and the apparent success of Plaintiff's treatment, substantial evidence supports ALJ Barr's conclusion that Plaintiff's migraines and stomach pain are non-severe.

Similarly, the administrative record establishes that Plaintiff's hip pain and hearing loss also respond to treatment. On three occasions in 2005 and 2006, Plaintiff

---

[4] Indeed, several of the medications listed in Plaintiff's Objection to the Magistrate's Report treat conditions, such as high blood pressure and certain mental disorders, which Plaintiff does not claim as disabling conditions.

received injections to treat her hip pain, and each time she was instructed to return for treatment as necessary. More than six months passed between Plaintiff's first and second requests for treatment. On all three occasions, Plaintiff's pain was treated by injection because injections "had worked pretty well for her" in the past. (R. 229). A service report from Dr. Louis C. Jordan dated July 19, 2006, the date of Plaintiff's third request for treatment, states that while "Symptoms seem to persist despite several injections[,] [s]he really has not been doing much of her exercises and stretching program." (R. 227). The record does not indicate that Plaintiff informed Dr. Jordan of significant difficulties bathing, performing housework, sitting or standing due to hip pain, as alleged in her Function Report. (R. 107–09). Given Plaintiff's infrequent requests for treatment and her seeming failure to advise her treating physician of alleged difficulties performing standard tasks, substantial evidence supports ALJ Barr's conclusion that Plaintiff's hip pain is non-severe.

Lastly, Plaintiff alleges hearing loss due to trauma reportedly occurring in the mid 1990s. (R. 174). Plaintiff worked full-time as a medical assistant until 2004, which required her to answer telephones and converse with patients about appointments, prescriptions, insurance, and the like. (R. 90). Plaintiff's hearing loss did not affect her performance of these tasks. In addition, Plaintiff had no difficulty understanding or responding to ALJ Barr at her hearing in 2007, during which she wore her hearing aids. (R.268). Plaintiff reportedly possesses normal communication ability and "excellent speech discrimination." (R. 174–78). As such, substantial evidence supports ALJ Barr's conclusion that Plaintiff's hearing loss is non-severe.

  **(b) Commissioner's Consideration of Plaintiff's Symptoms Individually Rather Than in the Aggregate**

Plaintiff next objects to the Magistrate's and ALJ Barr's alleged failure to consider the impact of Plaintiff's symptoms in the aggregate, rather than individually. Plaintiff's objection is not well taken. First, the Court notes that Plaintiff failed to raise this objection in her initial brief to this Court. Plaintiff is indeed correct that the Magistrate's Report does not directly assess ALJ Barr's consideration of Plaintiff's symptoms in the aggregate, but this is because the issue was not raised. A review of ALJ Barr's decision, however, indicates that the aggregate impact of plaintiff's symptoms combined was considered by the ALJ. ALJ Barr specifically found that "claimant did not have an impairment or combination of impairments that significantly limited her ability to perform basic work activities . . . ." (R. 17A). He further found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms" to be "not entirely credible" given that her symptoms did not prevent her from doing housework, shopping, attending church weekly, and visiting with relatives during the period at issue (R. 19). ALJ Barr determined that Plaintiff's reported activities were "completely inconsistent with her report that she was . . . 'chained to her house' with nausea, diarrhea, vomiting, and headaches." (Id.). ALJ Barr considered the combined impact of Plaintiff's impairments, and nonetheless concluded that she was not under a disability as defined in the Social Security Act.

## V. CONCLUSION

For the foregoing reasons, the Court hereby **ADOPTS** the findings and recommendations set forth in the Report of the United States Magistrate Judge filed on October 19, 2010. The final decision of the Commissioner is hereby **AFFIRMED**.

Accordingly, Defendant's Motion for Summary Judgment is **GRANTED**, the Plaintiff's Motion for Summary Judgment is **DENIED**, and this case is **DISMISSED**.

The Clerk of the Court is **DIRECTED** to mail a copy of this Final Order to all counsel of record for the parties

IT IS SO ORDERED.

/s/
Robert G. Doumar
Senior United States District Judge

/s/
United States District Judge

February 8, 2011

Norfolk, Virginia